IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,

           Plaintiff,

v.

U.S. DEPARTMENT OF JUSTICE,

           Defendant.

Civil Action No. 1:23-cv-03110-DLF

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION AND REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

      In its opening brief, Defendant demonstrated that to confirm or deny the existence or nonexistence of records responsive to Plaintiff's Freedom of Information Act ("FOIA") request—which seeks communications between the Fulton County District Attorney's Office and Special Counsel Jack Smith relating to the Special Counsel's ongoing criminal proceedings involving former President Donald Trump—would reveal information exempt from disclosure under Exemption 7(A) of the FOIA, because such disclosure could reasonably be expected to interfere with Special Counsel Smith's ongoing investigation and prosecutions. In response, Plaintiff does not dispute that any records that might exist would have been created for law enforcement purposes, bringing any such hypothetical records within the scope of Exemption 7. Plaintiff also does not contend that the existence of any such records has been officially disclosed. Nor does Plaintiff dispute that the Defendant has identified pending enforcement proceedings related to the request with which Defendant has determined that confirmation of the existence or nonexistence of the records could reasonably be expected to interfere. Plaintiff challenges only the basis for this

1

determination. But Defendant has shown more than what is necessary to meet the deferential standard, and summary judgment must therefore be granted in its favor.

## ARGUMENT

### Defendant Correctly Invoked Its Glomar Response Under FOIA Exemption 7(A)

In its opening brief, Defendant established that the threshold requirements for Exemption 7 are satisfied and that the Special Counsel's pending enforcement proceeding against former President Trump is directly related to the subject of Plaintiff's FOIA request. Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Br.") 6-8, ECF No. 9-1. Plaintiff does not dispute this. Pl.'s Mem. of P. & A. in Opp'n to Def.'s Mot for Summ. J. & in Supp. of Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Br.") 2-3, ECF Nos. 11 & 12-1; *see also id.* at 3-5. Plaintiff likewise concedes that there has been no "official acknowledgement" of responsive records that would overcome Defendant's Glomar response. *Id.* at 2-3; *see generally ACLU v. CIA*, 710 F.3d 422, 427 (D.C. Cir. 2013) (explaining that "the plaintiff can overcome a *Glomar* response by showing that the agency has already disclosed the fact of the existence (or nonexistence) of responsive records, since that is the purportedly exempt information that a *Glomar* response is designed to protect").

Plaintiff disputes only whether, consistent with the statutory requirements of Exemption 7(A), Defendant has "demonstrate[d] that 'disclosure . . . could reasonably be expected to interfere with'" Special Counsel Smith's pending enforcement proceeding against former President Trump. *Citizens for Resp. & Ethics in Wash. v. DOJ*, 746 F.3d 1082, 1096 (D.C. Cir. 2014) (quoting *Mapother v. DOJ*, 3 F.3d 1533, 1540 (D.C. Cir. 1993)); *see United States v. Trump*, No. 1:23-cr-257-TSC (D.D.C.). But the showing a Defendant must make to satisfy this requirement is not high; courts must "give deference to an agency's predictive judgment of the harm that will result from [the] disclosure of information." *Cable News Network, Inc. v. FBI*, 298 F. Supp. 3d 124, 129

2

(D.D.C. 2018) (quoting *Citizens for Resp.*, 746 F.3d at 1098).

Defendant has more than established the reasonableness of Defendant's predictive judgment that disclosure of the existence or nonexistence of relevant records could reasonably be expected to interfere with the Special Counsel's ongoing prosecution of the former President. Specifically, Defendant established that Special Counsel Smith's Office ("SCO") determined that "its ongoing criminal enforcement proceedings could be adversely affected by an acknowledgement of the existence or non-existence of any such communications between the two offices related to the SCO's ongoing enforcement actions because it could reveal information about the nature, scope and direction of the SCO's investigation." Brinkmann Decl. ¶ 16, ECF No. 9-3; *see* Def.'s Br. at 8-10. Specifically, the SCO determined that

> Disclosure of whether or not . . . the SCO has communicated with . . . the D.A.'s Office concerning the criminal proceedings could allow defendants, potential persons of interest, or adversarial third parties to draw inferences or conclusions as to the nature, direction, and scope of the respective investigations and proceedings,

and that "if such records were acknowledged, defendants, persons of interest, adversarial third parties, or even witnesses could modify or alter their testimony or assistance, or could potentially fabricate or destroy evidence." Def.'s Br. at 9. These are precisely the interests that Exemption 7(A) serves to protect. *See, e.g.*, *Kansi v. DOJ*, 11 F. Supp. 2d 42, 44 (D.D.C. 1998) ("The potential for interference with witnesses and highly sensitive evidence . . . drives the 7(A) exemption [.]"). However, should the Court request further explanation of why the SCO anticipates that being required to confirm or deny the existence of responsive records could interfere with its pending enforcement proceedings against former President Trump, Defendant will submit an additional declaration for *in camera* review in light of the potential harm that further explanation in the public record could cause to Special Counsel Smith's investigation.

3

Plaintiff makes three arguments in opposition, none of which has merit. First, Plaintiff relies on *Farahi v. FBI*, 643 F.Supp.3d 158 (D.D.C. 2022), which it concedes is a "non-*Glomar* . . . case," Pl.'s Br. at 3, to contend that the government is required to conduct a "document-by-document review" and then "define . . . categories [of responsive documents] functionally" to establish the application of Exemption 7(A), *Farahi*, 643 F.Supp.3d at 169-70 (citation omitted). In other words, Plaintiff suggests that in order to support a Glomar response supported by Exemption 7(A), an agency must first admit the existence of responsive records. To state this proposition is to refute it: There can be no need to "define . . . categories [of responsive documents] functionally" in Glomar cases, because doing so would cause the harm that the Glomar response is used to prevent. In short, Plaintiff's suggestion defeats the Glomar doctrine's very purpose, *i.e.*, protecting agencies from the need to confirm or deny the existence of responsive documents to begin with.[1] Unsurprisingly, Plaintiff's argument is at odds with the case law, and courts routinely uphold Glomar requests predicated on Exemption 7(A), without instituting any putative requirement to "define . . . categories [of documents] functionally" or "conduct a document-by-document review" as in non-Glomar cases like *Farahi*. *See, e.g.*, *Eddington v. DOJ*, 581 F. Supp. 3d 218, 235 (D.D.C. 2022) (holding that "revealing whether the records exist 'could reasonably be expected to interfere with enforcement proceedings,' 5 U.S.C. § 552(b)(7)(A), and the DOJ's *Glomar* response under Exemption 7(A) was appropriate," with no requirement of document-by-document review or categorization); *Leopold v. DOJ*, 301 F. Supp. 3d 13, 27-29 (D.D.C. 2018) (same); *see generally ACLU*, 710 F.3d at 427 ("In the *Glomar* context, the 'specific

---

[1] Indeed, Plaintiff's argument presumes the existence of responsive records, a presumption for which there is no direct support.  It is to refute the legitimacy of this very presumption, and the contrary one as well, that the Glomar doctrine refuses to confirm or deny the existence or non-existence of responsive records.

4

information' at issue is not the contents of a particular record, but rather 'the existence *vel non*' of any records responsive to the FOIA request." (citation omitted)).

Second, Plaintiff contends that there can be no harm to the SCO's ongoing enforcement proceedings because some preliminary proceedings have taken place and aspects of these proceedings have been reported in the press. *See* Pl.'s Br. at 4-5. But the SCO's enforcement proceedings against the former President have not yet gone to trial, and indeed, as of this filing no trial date has been set. Accordingly, much can still develop in the proceedings, including, for example, the development of additional testimony, the identification of new facts or witnesses, or cooperation agreements with previously identified witnesses. The SCO has assessed that any of these potential developments could be negatively impacted by an acknowledgement of whether or not records responsive to Plaintiff's FOIA request exist. *See* Brinkmann Decl. ¶ 16. For this reason, courts have repeatedly rejected the premise behind Plaintiff's argument, explaining that "[t]he potential for interference with witnesses and highly sensitive evidence that drives the 7(A) exemption, exists at least until [the relevant criminal defendant]'s conviction is final." *Kansi*, 11 F. Supp. 2d at 44 (citation omitted); *see also Pawlowski v. United States*, No. 19-3740 (TJK), 2023 WL 8272203, at *3 (D.D.C. Nov. 14, 2023) ("Plaintiff has not shown that the FBI has improperly invoked Exemption 7(A) to withhold responsive records" because "[a]lthough Plaintiff's direct appeal challenging the sufficiency of the evidence in his criminal case has concluded, his other appeal—challenging the denial of his motion for a new trial—has not."); *see generally Moorefield v. U.S. Secret Serv.*, 611 F.2d 1021, 1025 (5th Cir. 1980) ("Usually the 'purpose and point' of an investigation expires when its goal, the holding of an adjudicatory proceeding, is reached. Hence, an enforcement proceeding can generally be equated with a trial."). That some reporting about the ongoing proceedings has occurred, in other words, provides no basis to question the potential harm

in disclosure anticipated by the SCO.

Finally, Plaintiff unfoundedly speculates that there *must* be responsive records because the Fulton County District Attorney's Office (which is not the Defendant or a party to Plaintiff's request) has reportedly communicated about its investigation with other non-Defendants, such as a congressional committee. *See, e.g.*, Pl.'s Br. at 5 (speculating that "any reasonable person already assumes" responsive materials exist). But Plaintiff's speculation is just that, and the fact that Plaintiff has identified a single newspaper article reporting that the Fulton County District Attorney's Office spoke to entities in the federal government other than Defendant (let alone the SCO in particular) is neither relevant to this case nor probative of the existence or nonexistence of records responsive to Plaintiff's FOIA request at issue here. *See generally Frugone v. CIA,* 169 F.3d 772, 774 (D.C. Cir. 1999) ("[W]e do not deem 'official' a disclosure made by someone other than the agency from which the information is being sought.").[2]

More generally, Plaintiff's speculation itself demonstrates the risk of harm that a disclosure of whether or not such communications exist could cause. *See* Pl's Br. at 4-5. Despite having no information whatsoever as to whether or not responsive records exist, Plaintiff appears certain that they do and has taken action (including opposing Defendant's instant motion) on the basis of that speculation. Those who may be parties or witnesses to Special Counsel Smith's prosecution of the former President or related proceedings may also be speculating about whether the relevant communications exist, but at present do so without any factual basis. If responsive materials were

---

[2] Plaintiff also does not dispute Defendant's showing that the foreseeable harm requirement is satisfied and has thus waived any such contention. *See* Def.'s Br. at 10; *see also Power Co. of Am., L.P. v. FERC*, 245 F.3d 839, 845 (D.C. Cir. 2001) ("This argument was not raised in [Plaintiff]'s opening brief and is therefore waived.")

acknowledged to exist—even limited, non-substantive information about them like their date and the sender and recipient—no doubt there would be further inferences drawn about the nature of those communications, whether correctly or incorrectly, including by those who may have a role to play in future proceedings. These parties may then alter their behavior in response to the inferences that they may draw from the information. Similarly, if it were disclosed that responsive materials do *not* exist, those same parties might draw inferences from that information and likewise alter their behavior as a result. The only way to mitigate either harm to the SCO's pending enforcement proceedings is to decline to either confirm or deny the existence of responsive materials, as Defendant has done.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant its motion for summary judgment (ECF No. 9), deny Plaintiff's cross-motion for summary judgment (ECF No. 12) and enter judgment in Defendant's favor on Plaintiff's claim.

DATED: June 12, 2024                     Respectfully submitted,

                                         BRIAN M. BOYNTON
                                         Principal Deputy Assistant Attorney General

                                         ELIZABETH J. SHAPIRO
                                         Deputy Director

                                         */s/ Christopher M. Lynch*
                                         CHRISTOPHER M. LYNCH
                                         (D.C. Bar No. 1049152)
                                         Trial Attorney
                                         U.S. Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L St., NW
                                         Washington, DC 20005
                                         Telephone: (202) 353-4537
                                         Facsimile: (202) 616-8470

        Email: Christopher.M.Lynch@usdoj.gov

        *Counsel for Defendant*